FILED

2009 SEP -1 PM 3: 52

CLERK U.S. DISTRICT COURT
CENTRAL DIST. C. CALIF.
LOS ANGELES

BY_____

1  JEFF S. WESTERMAN (SBN 94559)
   jwesterman@milberg.com
2  SABRINA S. KIM (SBN 186242)
   skim@milberg.com
3  MILBERG LLP
   300 S. Grand Ave., Suite 3900
4  Los Angeles, CA 90071
   Telephone: (213) 617-1200
5  Facsimile: (213) 617-1975

6  PETER SAFIRSTEIN                    IAN D. CHOWDHURY (SBN 199018)
   psafirstein@milberg.com             ian@ianchowdhury.com
7  ANDREI RADO                         LAW OFFICE OF IAN
   arado@milberg.com                   CHOWDHURY
8  ROLAND RIGGS                        8853 Fullbright Avenue
   rriggs@milberg.com                  Winnetka, CA 91306
9  MILBERG LLP                         Telephone: (818) 407-0510
   One Pennsylvania Avenue, 49th Floor Facsimile: (818) 337-2215
10 New York, NY 10119
   Telephone: (212) 594-5300
11 Facsimile: (212) 868-1229

12 Attorneys for Plaintiffs and the Class

13                    UNITED STATES DISTRICT COURT

14                    CENTRAL DISTRICT OF CALIFORNIA

15                          WESTERN DIVISION                        GAF

16 ANTHONY MAGNONE and          )  CASE NO. CV09-6375 (CWx)
   RANDAL KINNUNEN,             )
17 Individually and on Behalf of All )  CLASS ACTION COMPLAINT
   Others Similarly Situated,   )  FOR:
18                              )  (1) VIOLATION OF CONSUMER
              Plaintiffs,       )  LEGAL REMEDIES ACT;
19                              )  (2) BREACH OF CONTRACT;
        v.                      )  (3) VIOLATION OF FAIR DEBT
20                              )  COLLECTION PRACTICES ACT;
   ACCRETIVE LLC; AGORA FUND    )  (4) VIOLATION OF ROSENTHAL
21 I GP, LLC; AXIANT, LLC; MANN )  FAIR DEBT COLLECTION
   BRACKEN, LLP; NATIONAL       )  PRACTICES ACT;
22 ARBITRATION FORUM, INC.;     )  (5) VIOLATION OF CALIFORNIA
   NATIONAL ARBITRATION         )  BUSINESS & PROFESSIONS CODE
23 FORUM, LLC; DISPUTE          )  § 17500 et seq.;
   MANAGEMENT SERVICES, LLC     )  (6) VIOLATION OF CALIFORNIA
24 d/b/a FORTHRIGHT SOLUTIONS;  )  BUSINESS & PROFESSIONS CODE
   DOES 1-10, inclusive;        )  § 17200 et seq.
25                              )
              Defendants.       )  DEMAND FOR JURY TRIAL
26                              )

27

28

COPY

CLASS ACTION COMPLAINT

DOCS\484105v3

# Table of Contents

**Page**

INTRODUCTION.................................................................................................1

JURISDICTION AND VENUE ..........................................................................7

PARTIES..............................................................................................................7

GENERAL ALLEGATIONS .............................................................................10

    Accretive Owns and Controls Defendants.................................................11

    Defendants' Scheme Deceived Consumers and the Courts .........................13

    Accretive Aided and Abetted the Deception Perpetrated on
    Consumers and the Courts........................................................................19

CLASS ALLEGATIONS ...................................................................................19

FIRST CAUSE OF ACTION (Violation of Consumer Legal Remedies Act)........21

SECOND CAUSE OF ACTION (Breach of Contract Against NAF) ...................23

THIRD CAUSE OF ACTION (Violation of the Fair Debt Collection
    Practices Act)............................................................................................23

FOURTH CAUSE OF ACTION (Violation of the Rosenthal Fair Debt
    Collection Practices Act) ...........................................................................24

FIFTH CAUSE OF ACTION (Violation of Bus. & Prof. Code Section
    17500 et seq.)...........................................................................................24

SIXTH CAUSE OF ACTION (Violation of Bus. & Prof. Code Section
    17200 et seq.)...........................................................................................25

PRAYER FOR RELIEF.....................................................................................26

DEMAND FOR JURY TRIAL..........................................................................27

CLASS ACTION COMPLAINT

DOCS\484105v3

Plaintiffs Anthony Magnone and Randal Kinnunen, on behalf of themselves and all others similarly situated, allege the following against Accretive LLC, Agora Fund I GP, LLC, Axiant, LLC, Mann Bracken, LLP, National Arbitration Forum, Inc., National Arbitration Forum, LLC, and Forthright Solutions (collectively "Defendants"), upon personal knowledge as to their own actions and status, and upon information and belief as to all other matters.[1]

## INTRODUCTION

1.     Most consumer credit card agreements contain mandatory arbitration clauses, which require consumers to forfeit their rights to litigate their disputes in court and mandate that any disputes be resolved through an alternative system of binding arbitration.   Many of these agreements require disputes to be resolved exclusively through Defendant National Arbitration Forum ("NAF").[2]   For years, NAF falsely held itself out as an independent provider of neutral arbitration services in consumer debt matters, unaffiliated with any persons or entities within or outside the collections industry.   Now, NAF is under siege by local and state prosecutors for working alongside creditors, rubber-stamping illegitimate arbitration awards against consumers, deceiving the courts and the public, and undermining the integrity of the arbitration system.

2.     Defendant Mann Bracken LLP ("Mann Bracken") claims to be a law firm specializing in consumer debt collection matters, but it is a debt collector in its own right.   Mann Bracken initiated thousands of so-called "arbitrations" through NAF.   Most of these arbitrations were against consumers from whom Mann Bracken attempted to collect alleged credit card debts on behalf of its corporate clients, *e.g.*, major credit card companies.   As a self-proclaimed "independent and

---

[1] Mr. Kinnunen asserts claims against all Defendants.  Mr. Magnone asserts claims against all Defendants except Mann Bracken, LLP.

[2] "NAF" refers collectively to defendants National Arbitration Forum, Inc. ("NAF Inc."), National Arbitration Forum, LLC ("NAF LLC"), and Dispute Management Services, LLC, d/b/a Forthright Solutions ("Forthright").

impartial arbitration provider," NAF was supposed to provide arbitration services devoid of conflicts of interest.

3.    In reality, NAF and Mann Bracken worked in tandem for the collections industry, their interests strictly aligned with credit card companies against consumers by virtue of their common owner, Defendant Accretive, LLC ("Accretive").   Accretive owns and controls both NAF and Mann Bracken, and their related entities.   NAF was thus far from an "independent and impartial arbitration provider," and instead, was a sham operation whose primary purpose was to rubber-stamp arbitration awards and confer the appearance of legitimacy upon Mann Bracken's debt collection efforts.   NAF concealed its conflict of interest and provided bogus arbitration services instead of the legitimate dispute resolution services it promised and was contractually obligated to deliver to consumers.

4.    The Attorney General of Minnesota recently exposed the concealed relationship between NAF and Mann Bracken, and the financial relationship with their common owner, a group of New York hedge funds known as Accretive LLC. According to the Attorney General's complaint, NAF "is financially affiliated with a New York hedge fund group that owns one of the country's major debt collection enterprises," which relationship NAF and Mann Bracken conceal from consumers.[3] Within days, NAF was forced to announce it was getting out of the consumer arbitration business.

5.    The People of the State of California also sued NAF in a consumer fraud action brought by the City Attorney for the City of San Francisco. According to the City Attorney's complaint, based on NAF's own statistics from 2003 to 2007, "in each and every case where a business entity brought a claim against a consumer and the matter was disposed of by hearing, the NAF arbitrator

---

[3] Comp. ¶ 2, *State v. Nat'l Arbitration Forum, Inc.*, (Minn. Dist. Ct. filed July 14, 2009).

CLASS ACTION COMPLAINT

DOCS\484105v3

ruled in favor of the business entity – a 100% success rate." Comp. ¶22, State v. NAF, Case No. 08-473569 (Cal. Super. Ct., filed August 22, 2008). As alleged, NAF maintained its near perfect success rate for businesses by engaging in improper, deceptive and corrupt acts, including by:

        (a)    establishing incentives for arbitrators to favor debt collectors over consumers;

        (b)    disregarding consumers' evidence and/or arguments;

        (c)    overlooking and violating its own Code of Procedure to benefit debt collectors, and ultimately, large creditors;

        (d)    disregarding creditors lack of evidence; and

        (e)    failing to provide the bona fide arbitration services it promised to consumers.

6.    NAF and Mann Bracken worked hand-in-hand to create the illusion of legitimacy and due process, with the purpose of railroading consumers into a corrupt dispute resolution process and bilking consumers out of hundreds or thousands of dollars, including NAF charges and Mann Bracken's alleged legal fees and costs. Despite revelation of their ruse, neither NAF, Mann Bracken, or any of the other Defendants, including Accretive, has returned the money consumers paid for the "arbitration" services they never received.

7.    To commence debt collection, Mann Bracken submitted its claim to NAF and then mailed a "Notice of Arbitration," using a standardized form provided by NAF. The Notice falsely claimed that (a) NAF "is an independent and impartial arbitration organization, which does not give legal advice or represent parties"; and (b) "Parties have a full and equal right to present relevant and reliable direct and cross examination testimony, documents, exhibits, evidence and arguments." The Notice also provided that: "IF YOU DO NOT . . . FILE WITH THE FORUM A WRITTEN RESPONSE, AN ARBITRATION AWARD MAY BE ENTERED AGAINST YOU [AND] AN ARBITRATION AWARD

- 3 -

1  MAY BE ENFORCED IN COURT AS A CIVIL JUDGMENT." (all-caps in
2  original).

3         8.    The Notice of Arbitration also directed consumers to NAF's Code of
4  Procedure (the "NAF Code") for information on filing a response.  The NAF Code
5  required, among other things, that the consumer's response "shall include" any
6  "fees as provided in the Fee Schedule."  In addition to other fees and costs that
7  were later tacked on to bogus arbitration awards (described below), the NAF Code
8  required consumers to make a $50.00 initial payment on the NAF "administration
9  fee," in order to file a response to the Notice of Arbitration and avoid defaulting in
10 the arbitration proceedings.   Consumers paid such consideration to NAF for
11 "independent and impartial arbitration" services, but did not receive the services
12 for which they bargained.   NAF and Mann Bracken knew, at the onset of
13 arbitration, that regardless of whether consumers actively participated in the
14 arbitration proceedings or defaulted, consumers would be deprived of due process
15 and would not receive legitimate dispute resolution services, and that NAF would
16 issue an award against the consumer, in favor of Mann Bracken's client.

17        9.    After a Notice of Arbitration was mailed to a consumer, a form letter
18 on NAF's letterhead was generated with an "Award" in favor of the debt collector
19 claimant and against the respondent consumer, and rubber-stamped by an NAF
20 arbitrator.  Although the award amounts and respondent names differed, the basic
21 template remained the same, including the following rote "findings" and
22 "conclusions," among others: (a) "The Arbitrator has reviewed all evidence
23 submitted in this case;" (b) "The Arbitrator knows of no conflict of interests that
24 exist;" (c) "The evidence submitted supports the issuance of this Award;" and (d)
25 "The applicable substantive law supports the issuance of the Award."

26        10.   The "Award in favor of the Claimant" was invariably for hundreds or
27 thousands more than the debt owed.  Plaintiffs believe the sizeable gap between the
28 amount of the alleged underlying debt and the amount awarded can be traced to the

- 4 -

improper inclusion of Mann Bracken's legal fees and NAF-related costs. In the end, consumers paid illegitimate fees and costs, including a $50.00 initial payment on the NAF administration fee and exorbitant legal fees and costs -- for services never rendered and for the futile exercise of having their debt disputes "decided" by the very party opposing them.

11.    Defendants' conduct is particularly egregious because it compromises the legitimacy of our judicial system. Courts depend heavily upon the perceived integrity and efficiency of private arbitration. Indeed, California and other states fostered the growth of the arbitration industry by streamlining the process of converting arbitration awards into judgments, as evidenced in Defendants' Notice of Arbitration: "AN ARBITRATION AWARD MAY BE ENFORCED IN COURT AS A CIVIL JUDGMENT." Defendants exploited this public interest opportunity by perverting private arbitration into an unregulated trough for themselves and the collections industry. Creditors who took their business to Mann Bracken and NAF did not have to worry about losing, which is exactly how Defendants appealed to large creditors and dominated the consumer debt arbitration market for years. Indeed, while holding itself out to the public as independent and neutral, "[b]ehind closed doors, NAF [sold] itself to lenders as an effective tool for collecting debts."[4]  BusinessWeek recently uncovered shocking examples of NAF's marketing to debt collectors, including a late 2007 "confidential" Powerpoint presentation aimed at creditors that promised, among other things, "marked increase in recovery rates over existing collection methods."[5] The process of legitimizing alternative dispute resolution as an industry can only begin by requiring Defendants to disgorge their ill-gotten gains.

---

[4] Robert Berner & Brian Grow, *Banks vs. Consumers (Guess Who Wins)*, BusinessWeek, June 5, 2008.

[5] *Id.*

CLASS ACTION COMPLAINT

DOCS\484105v3

12. Plaintiffs bring this lawsuit against Defendants on behalf of themselves and all other similarly situated consumers, alleging claims for breach of contract and violations of the Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C §1692, *et seq.*; the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788, *et seq.*; and California Business and Professions Code § 17200, *et seq.* and § 17500, *et seq.* for false advertising and unfair competition.

13. Plaintiffs are not aware of the true names and capacities of defendants sued as DOES 1 through 20, and therefore sue these defendants by such fictitious names. Each fictitiously named defendant is responsible in some manner for the occurrences alleged in this Complaint. Plaintiffs will amend this Complaint to add the true names of the fictitiously named defendants once they are discovered.

14. Each defendant knew or realized that the other defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that other defendants were engaging in such unlawful conduct, each defendant facilitated the commission of those unlawful acts. Each defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other defendants in the unlawful conduct.

15. Although each defendant purports to be a separate entity, in fact, Accretive is the alter ego of other defendants, as detailed below in the section, "Accretive Owns and Controls the Other Defendants." At all relevant times, there existed a unity of interest and ownership between Accretive and the other defendants, such that any individuality and separateness between them ceased, and Accretive exerted control over each of the other defendants. Accretive directly owns and controls defendant Axiant, LLC, and indirectly owns and controls defendants Agora Fund I GP, LLC ("Agora"), NAF Inc., NAF LLC, Forthright,

- 6 -

DOCS\484105v3

and Mann Bracken. Adherence to the fiction of the separate existence of these defendants as entities distinct from Accretive will permit an abuse of the corporate privilege, condone deception and promote injustice.

16. Whenever reference is made in this Complaint to any act of defendants, such allegation shall mean that each defendant acted individually and jointly with the other defendants named in that cause of action.

17. Plaintiffs seek injunctive relief, actual, statutory and punitive damages, restitution, disgorgement of profits, and costs of suit, including attorneys' fees, as appropriate.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1640(e), and pursuant to 28 U.S.C. 1332(d), since there are at least 100 class members in the proposed class, the combined claims of proposed class members exceed $5,000,000, exclusive of interest and costs, and numerous class members are citizens of states other than Defendants' states of citizenship

19. This Court has personal jurisdiction over Defendants because Defendants conduct substantial business in this District, have sufficient minimum contacts with this state, and otherwise purposely avail themselves of the markets in this state through the promotion, sale, and marketing of their services in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

20. Venue is proper pursuant to 28 U.S.C. 1391(a) because one of the Plaintiffs resides here, Defendants do business in this District and receive substantial fees from customers in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

21. Plaintiff Anthony Magnone is a resident of Tarzana, California, in the County of Los Angeles. In 2008, Mann Bracken filed three arbitration claims

CLASS ACTION COMPLAINT

against him, and in each instance, NAF issued an award against Mr. Magnone in favor of Mann Bracken's client, non-party FIA Card Services ("Bank of America"). NAF never provided arbitration services or engaged in any decision making process before issuing the awards. Mr. Magnone's claims are asserted against all Defendants except Mann Bracken.

22.     Plaintiff Randal Kinnunen is a permanent resident of the state of Washington.[6] Around December 3, 2008, Mann Bracken filed an arbitration claim against Mr. Kinnunen, and NAF issued an award against Mr. Kinnunen in favor of non-party Chase Bank "care of" Mann Bracken. NAF never provided arbitration services or engaged in any decision making process before issuing the award.

23.     Defendant National Arbitration Forum, Inc. ("NAF Inc.") is a Minnesota limited liability company with its registered address and principal place of operations at 6465 Wayzata Blvd., St. Louis Park, Minnesota 55426. It does business as "National Arbitration Forum" and "Forum."

24.     Defendant National Arbitration Forum, LLC ("NAF LLC") is a Delaware limited liability company with its registered address and principal place of operations at 6465 Wayzata Blvd., St. Louis Park, Minnesota 55426. It also does business as "National Arbitration Forum." NAF LLC is wholly owned by NAF Inc.

25.     Defendant Dispute Management Services, LLC, d/b/a Forthright Solutions ("Forthright") is a Delaware limited liability company with its registered address and principal place of operations at 6465 Wayzata Blvd., St. Louis Park, Minnesota 55426. Forthright is 58% owned by NAF Inc. and 40% owned by the Agora Funds, which, in turn, are owned by Accretive LLC. Forthright and NAF LLC have a "services agreement" with one another, as described below.

---

[6] At the time of the wrongdoing perpetrated on him, Mr. Kinnunen was a resident of South Carolina.

CLASS ACTION COMPLAINT

DOCS\484105v3

26.    Collectively, Defendants NAF Inc., NAF LLC, and Forthright are referred as "NAF" throughout this Complaint. As detailed below, NAF was organized and operated as one entity until it split itself into three entities to obscure its relationship with the other Defendants named in this Complaint.

27.    Defendant Accretive LLC ("Accretive") is a Delaware limited liability company with its headquarters at 51 Madison Avenue, 31st Floor, New York, NY 10010, and its registered address at 55 East 59th Street, 22nd floor, New York, NY 10022.  Accretive consists of a family of private equity funds under the control of investment manager J. Michael Cline ("Cline").   Throughout the Class Period, Accretive owned and controlled the other Defendants and aided and abetted their wrongful conduct.

28.    Defendant Agora Fund I GP, LLC ("Agora") is a Delaware limited liability company with its headquarters at 55 East 59th Street, 22nd floor, New York, NY 10022.  Agora is the managing partner of Agora Fund I, LP, a Delaware limited partnership, Agora Fund I Coinvestment Partners, LP, a Delaware limited partnership, and Agora Fund I Holding Partners, a Delaware general partnership (collectively, the "Agora Funds"), which hold a 40% interest in defendant Forthright.  Agora is under the control of Accretive's Cline.

29.    Defendant Axiant, LLC ("Axiant") is a debt collector, headquartered in Huntersville, North Carolina, which bills itself as a "leading national provider of financial services and recovery management solutions for issuers and investors in debt products."   It is approximately 68% owned by non-party MB Acquisition Solutions Corp., which in turn is 100% owned by Accretive.  The other 32% of Axiant is owned by the principals of what is now Mann Bracken.

30.    Defendant Mann Bracken, LLP ("Mann Bracken") is a debt collector, organized as a Delaware limited liability partnership, with principal offices in Rockville, Maryland.  It is the successor firm that resulted from the merger of three

CLASS ACTION COMPLAINT

DOCS\484105v3

large debt-collection law firms: California-based Eskanos & Adler, Georgia-based Mann Bracken, and Maryland-based Wolpoff & Abramson.

31.    Both Mann Bracken's and Axiant's websites refer to a "strategic alliance" between the two entities.  For example, Axiant states that it provides "call center collections facilitated through our strategic alliance with Mann Bracken, LLP" and that it provides both "national arbitration services" and "litigation services" "through Mann Bracken, LLP."

## GENERAL ALLEGATIONS

32.    Arbitration is a form of alternative dispute resolution that can offer substantial benefits in judicial access and efficiency.  However, arbitration also exacts a price by requiring consumers to give up their rights to litigate the dispute or appeal the arbitration awards.  Arbitration awards are binding on the parties and cannot be reviewed except in narrow circumstances.

33.    Only a handful of arbitration service providers exist.  NAF dominated consumer arbitrations in the credit card debt collections industry.  Recent public enforcement actions challenge NAF's misrepresentations to the public that it is an independent and neutral arbiter.   These lawsuits allege NAF's claims are contradicted by NAF's own reported statistics which reflect astounding success rates for businesses over consumers.

34.    NAF's guaranteed success rate for businesses is hardly surprising given that NAF is owned by the same hedge fund group (Accretive) that owns debt collection agencies, Axiant and Mann Bracken, which arbitrated against consumers before NAF.  As reported, NAF, Axiant, and Mann Bracken are under the common control and ownership of Accretive, which financially benefits from arbitration awards obtained by Axiant and Mann Bracken, and fees collected by NAF.  Thus, the same control group that owns and controls debt collectors Axiant and Mann Bracken also owns and controls the purportedly independent NAF.

DOCS\484105v3

35.    Defendants hid their financial affiliation for years until the Minnesota Attorney General's recent lawsuit revealed Defendants' true ownership structure, as summarized below.

**Accretive Owns and Controls Defendants**

36.    Around June 2006, Accretive met with officers of NAF, which was then a single entity (the Forum), to discuss the possibility of Accretive acquiring a stake in the Forum.    Accretive told NAF that it was "very impressed" with the Forum's arbitration business and wanted to assist the company with cash and future business.    In return, Accretive sought a 40% stake in the Forum.

37.    Around the same time, three large debt-collection law firms merged to form Mann Bracken, which in turn sold its assets and collections operations to Axiant -- a company created and owned by Accretive.    The executives of the Forum were aware of this merger and sale.

38.    As talks between Accretive and the Forum advanced, the two sides realized that any public acknowledgement of the relationship between the Forum, Accretive, and Axiant/Mann Bracken would destroy the Forum's credibility, and hence its ability to attract business and collect lucrative fees.

39.    To avoid transparency, the two sides entered into multiple transactions which, among other things, involved the Forum splitting into three parts -- NAF Inc., NAF LLC, and Forthright.    Thus, although NAF Inc., NAF LLC, and Forthright purport to be three separate companies, in fact, they are one and the same organization.    They have key officers and directors in common, and their addresses and office spaces are identical.

40.    In order to ensure Accretive received the 40% stake it bargained for, Accretive demanded that Forthright -- the only NAF company in which Accretive had a stake -- enter into a Services Agreement with NAF LLC.    Around the same time, Accretive created several funds, called the Agora funds, which were

CLASS ACTION COMPLAINT

DOCS\484105v3

registered to the same address as, and controlled by the same person that controlled Accretive. The Agora funds then purchased approximately 40% of Forthright.

41.    As reported, the Services Agreement provided that Forthright would receive the bulk of the "arbitration services" revenue after costs, and would control much of the administrative aspects of arbitration. In return, Forthright received from NAF LLC a seven figure monthly fee plus a bonus fee calculated based on NAF LLC's revenue.

42.    Through its ownership in Forthright and the Services Agreement between NAF LLC and Forthright (imposed by Accretive), Accretive achieved exactly what it sought -- a 40% stake in the National Arbitration Forum, and equally important, significant ownership and control over **both** the major arbitration arm (NAF) and the major debt collection arm (Mann Bracken) of the consumer debt collections industry.

43.    As reported, while negotiating these transactions, Accretive explained to NAF that "[o]ur investors have entrusted us with their funds on an assumption that we maintain a high level of governance oversight over our portfolio companies." Accretive accomplished as much with NAF, exercising control over NAF in at least the following ways:

(a)    Accretive directed NAF LLC and Forthright to enter into the Services Agreement to ensure itself a 40% stake in NAF;

(b)    Accretive created, invested in and shared employees and offices with each of the Agora Funds, which in turn invested in and controlled NAF;

(c)    Accretive provided, through its principals, resumes to NAF for NAF to consider in filling key positions, including the chief financial officer and chief operating officer;

(d)    Accretive continually sought to enlarge NAF's business by introducing new customers to NAF, helping NAF bid for new contracts, and seeking out new areas for NAF expansion;

CLASS ACTION COMPLAINT

(e)    Accretive helped NAF devise public relations campaigns, including opposition to proposed federal legislation designed to weaken mandatory arbitration clauses; and

(f)    Accretive required Forthright to submit detailed reports on its operations to Accretive.

44.    Similarly, Accretive exercised control over Axiant and Mann Bracken, by among other things, owning 68.7% of Axiant, employing members of Axiant's Board of Directors, and requiring Mann Bracken to submit detailed reports on its operations (just as it required of Forthright).

**Defendants' Scheme Deceived Consumers and the Courts**

45.    Many consumer credit contracts contain provisions mandating arbitration for disputes between the creditor and the consumer. NAF, as a major beneficiary of these mandatory arbitration provisions, sought to quell consumers' (well founded) fears by offering false assurances of integrity and impartiality, including the following posted on its website during the relevant time period:

> We are guided by experience, integrity and innovation.
> Our commitment to professional and legal standards
> produces clear, unbiased rules, and we accord disputing
> parties rights and privileges consistent with those of the
> judicial system. The former judges and experienced
> attorneys who hear and decide our cases review the facts
> and render decisions based on known rules and
> substantive law.

46.    To commence debt collection, Mann Bracken submitted a claim to NAF and mailed a "Notice of Arbitration," provided by NAF, to the consumer. The Notice falsely claimed that:

(a)    NAF "is an independent and impartial arbitration organization"; and

(b)    "Parties have a full and equal right to present relevant and reliable direct and cross examination testimony, documents, exhibits, evidence and arguments."

47.    The Notice of Arbitration directed consumers to the NAF Code, which also reinforced the misrepresentations, including the following:

(a)    "[NAF] arbitrators are neutral, independent, experienced and knowledgeable about the applicable law";

(b)    "A neutral Arbitrator shall not serve if circumstances exist that create a conflict of interest or cause the Arbitrator to be unfair or biased";

(c)    "This code shall be interpreted to provide all Parties with a fair and impartial arbitration and with reasonable access to civil justice"; and

(d)    "Awards shall be based upon a preponderance of the evidence presented, unless an agreement of the Parties or the applicable law provides otherwise."

48.    NAF's website also contained numerous misrepresentations, including the following:

(a)    NAF "accord[s] disputing parties rights and privileges consistent with those of the judicial system";

(b)    "Disputes are brought before a neutral third party (the arbitrator) who, after carefully reviewing all of the relevant information, issues a final decision in favor of one of the parties";

(c)    NAF "is independent and neutral. It is not affiliated with any party";

(d)    NAF "is an independent administrator of alternative dispute resolution services. Cases are heard and decided by unbiased legal experts";

CLASS ACTION COMPLAINT

(e)    NAF's "dispute resolution processes are designed to provide both parties with an equal opportunity to prevail"; and

(f)    "The Code of Procedure ensures all parties a fair, unbiased dispute resolution process."

49.    NAF's alleged "Bill of Rights" contained similar misrepresentations, including the following:

(a)    NAF provides a "justice system where claims are promptly resolved under the law by neutral legal experts at a cost commensurate with the matters in dispute";

(b)    NAF's "Participatory Hearing provides parties with virtually the same procedures available in court trials before a judge: written claims and responses, reasonable discovery, useful motions, direct and cross examinations of witnesses, introduction of relevant and reliable exhibits, opening and closing statements, a prompt and detailed award"; and

(c)    "The [NAF] Code of Procedure provides all parties with equal access to discovery and allows generally for the same discovery methods that are available in federal court."

50.    The boilerplate awards rubber-stamped by NAF arbitrators, binding on consumers and relied upon by the courts, provided the following illusory "findings" and "conclusions," among others:

(a)    "The Arbitrator has reviewed all evidence submitted in this case;"

(b)    "The Arbitrator knows of no conflict of interests that exist;"

(c)    "The evidence submitted supports the issuance of this Award;" and

(d)    "The applicable substantive law supports the issuance of the Award."

- 15 -

CLASS ACTION COMPLAINT

51.    Defendants knew or should have known these statements to be false and misleading, and thus the statements constitute a deception on the courts and consumers.

52.    The results of NAF's arbitrations stand in stark contrast to Defendants' misrepresentations.  According to the San Francisco City Attorney's complaint filed on August 22, 2008, in California alone, from January 1, 2003 to March 31, 2007, NAF handled over 33,948 consumer collections matters, of which 18,075 were disposed of by hearing before an arbitrator.  In *all* cases where a business brought a claim against a consumer and the matter was disposed of by hearing, the NAF arbitrator ruled in favor of the business 100% of the time, assisted by the high rate of consumer defaults in these hearings.  Indeed, only 30 of 18,075 cases resulted in a consumer victory and *all* of these involved the rare case where a consumer brought a claim against a business.

53.    The San Francisco City Attorney's allegations regarding NAF's track record are consistent with the allegations of a former NAF employee, who herself sought to avoid mandatory arbitration due to NAF's practices and sued Forthright.[7]  According to this former employee's complaint, NAF routinely:

(a)    directed arbitrators to change decisions if they were adverse to certain favored clients or potential clients (known within NAF as "Famous Parties");

(b)    ensured that arbitrators who ruled against Famous Parties were not hired again;

(c)    drafted claim forms for Famous Parties;

(d)    drafted fictitious affidavits and/or proofs of service to consumers;

---

[7] *Richert v. Nat'l Arbitration Forum, LLC et al.*, 0:09-cv-00763-ADM-JJK (Minn. Dist. Ct. filed April 2, 2009).

CLASS ACTION COMPLAINT

DOCS\484105v3

(e)    failed to forward responses filed by consumers to arbitrators; and

(f)    decided and issued its own rulings on procedural matters against consumers in lieu of an arbitrator's rulings.

54.    The former employee also reported that NAF's arbitrators were aware of these practices. In fact, the former employee added that social gatherings were often held in which arbitrators attempted to curry favor with NAF management in order to receive more assignments. These assignments paid as much as $325/hour. Incredibly, some arbitrators even called NAF's lawyers to ask them how they should rule on a particular case.

55.    Similarly, BusinessWeek recently revealed a September 2007 NAF marketing PowerPoint presentation aimed at creditors, labeled as "confidential," that not only promised a "marked increase" in collection recovery rates, but also "boasts[ed] that [a] creditor may request procedural maneuvers that can tilt arbitration in their favor. 'Stays and dismissals of action requests available without fee when request by Claimant -- allows claimant to control process and timeline.'"[8] According to an anonymous NAF arbitrator, these tactics allowed creditors to file actions even if they are not prepared, in that "[I]f there is no response [from the debtor], you're golden. If you get a problematic [debtor], then you can request a stay or dismissal."[9] Thus, in countless cases, a creditor received a default award, just because the debtor failed to respond to the notice of arbitration that was allegedly sent to him/her, and despite the creditor's failure to produce any evidence verifying the amount owed, or that the alleged debt was owed at all.

---

[8] Robert Berner & Brian Grow, *Banks v. Consumers (Guess Who Wins)*, BusinessWeek, June 5, 2008.

[9] *Id.*

CLASS ACTION COMPLAINT

DOCS\484105v3

56.    Accordingly, NAF entered arbitration awards against consumers no matter how baseless the creditor's claim, including in cases where:

(a)    the consumer was obviously not the same consumer who had incurred the debt but someone with a similar name;

(b)    the consumer was a victim of identity theft;

(c)    the consumer never received a notice of arbitration;

(d)    Mann Bracken failed to prove the existence of an arbitration agreement between the creditor and consumer;

(e)    Mann Bracken failed to document that it was lawfully authorized to collect the debt, or that there was an existing debt at all;

(f)    the alleged debt is past the statute of limitations;

(g)    the consumer sought to submit evidence or otherwise defend him/herself in the proceedings but was denied an opportunity to do so.

57.    In addition to awarding debt collectors the amount of the debt they sought, NAF consistently awarded additional sums to cover "expenses" and "attorneys fees." These expenses included fees charged by NAF itself for its part in the arbitration process. Specifically, NAF charged an "Administrative Fee" for its services, ranging from about $100 to over $1,000, and collected the first $50 of that fee at the time consumers filed their initial response to the Notice of Arbitration. Any portion of the fee that was not paid by the consumer up-front was later made part of NAF's "arbitration award."

58.    As reported, NAF did not independently verify that any of the "expenses" (other than its own fees) were actually incurred by Mann Bracken or other debt collectors for their so-called debt collection services, nor did it even require Mann Bracken to account for its time spent on a matter before awarding it attorneys' fees.

59.    Defendants sought to enforce these sham arbitration awards, which are virtually immune from judicial review, and included inflated amounts

- 18 -

DOCS\484105v3

exceeding the alleged debts owed, including illegitimate fees sought by Mann Bracken and NAF.

**Accretive Aided and Abetted the Deception Perpetrated on Consumers and the Courts**

60.    Accretive aided and abetted the unfair and unlawful practices alleged, by, among other things:

(a)    forming the Agora Funds in order to obscure the financial relationship amongst the Defendants;

(b)    engaging in transactions to obscure its ownership and control relationship with the other Defendants; and

(c)    advising creditors how to utilize NAF as a debt collection tool.

**CLASS ALLEGATIONS**

61.    Plaintiffs brings this class action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and others similarly situated.  The "Class" is defined as follows:

> All persons in the United States who had an arbitration award entered against them by NAF and in favor of Axiant, Mann Bracken or any of their predecessors and/or clients, between June 1, 2006 and the present (the "Class Period").

62.    The following persons shall be excluded from the Class:    (a) Defendants and their owners, subsidiaries and affiliates; (b) all persons who make a timely election to be excluded from the proposed Class; (c) governmental entities; and (d) the judge(s) to whom this case is assigned and any immediate family members thereof.

63.    Plaintiffs reserve the right to modify or amend the Class definition(s) before the Court determines whether certification is appropriate.

CLASS ACTION COMPLAINT

DOCS\484105v3

64.     The Class is so numerous that joinder is impracticable.  NAF's own publicly available records indicate that it has adjudicated hundreds of thousands of arbitrations during the Class Period.

65.     This action involves common questions of law and fact, including the following:

      a)    Whether Defendants violated the California Consumer Legal Remedies Act, California Civil Code § 1760, *et seq.*

      b)    Whether Defendants violated California Business & Professions Code § 17200, *et seq.* and § 17500, *et seq.*;

      c)    Whether Defendants violated the Fair Debt Collection Practices Act, 15 USC § 1692, *et seq.*;

      d)    Whether Defendants violated the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788, *et seq.*;

      e)    Whether Defendants' representations about legitimate arbitration services and awards were likely to deceive Plaintiffs and the Class;

      f)    Whether Defendants knew, or should have known, that their representations were false and/or misleading;

      g)    Whether consumers would have agreed to arbitrate consumer debt disputes before NAF had they known about Defendants' financial relationship with one another;

      h)    Whether NAF breached its contracts with consumers;

      i)    Whether Defendants were unjustly enriched as a result of Defendants' unlawful and unfair practices;

      j)    Whether Class members were injured as a result of Defendants' conduct; and

      k)    Whether Plaintiffs and the Class are entitled to relief, and the amount and nature of such relief.

- 20 -

66.    Plaintiffs will fairly and adequately represent the interests of the Class. Plaintiffs' interest do not conflict with the interests of the Class they seek to represent; they have retained counsel experienced in class actions and in consumer credit and debt collection abuse cases; and Plaintiffs intend to prosecute this action vigorously.

67.    Plaintiffs' claims are typical of the claims of the Class. Plaintiffs have no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.

68.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual litigation of the claims of all class members is impracticable because the cost of litigation would be prohibitively expensive for each class member and impose an immense burden upon the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex legal and factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented in this complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and is the only means to protect the rights of all class members.

## FIRST CAUSE OF ACTION
### (Violation of Consumer Legal Remedies Act)

69.    Plaintiffs incorporate the above allegations as if set forth herein.

70.    The CLRA applies to Defendants' actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

71.    Plaintiffs and the Class are "consumers" within the meaning of California Civil Code Section 1761(d).

CLASS ACTION COMPLAINT

DOCS\484105v3

72.     NAF's arbitration services are "services" within the meaning of California Civil Code Section 1761(b).

73.     Defendants violated the CLRA as follows:

  a)     In violation of Section 1770(a)(3), Defendants misrepresented their affiliation, connection, or association with one another;

  b)     In violation of Section 1770(a)(5), Defendants misrepresented that NAF arbitrations have characteristics and benefits that they do not have;

  c)     In violation of Section 1770(a)(9), Defendants advertised NAF arbitration services with an intent not to sell them as advertised. Defendants' advertisements were misleading to or likely to deceive the reasonable consumer; and

  d)     In violation of Section 1770(a)(14), Defendants represented that NAF sponsored arbitrations confer rights or remedies which they do not have or involve, or which are prohibited by law.

74.     Defendants concealed material facts regarding NAF arbitrations from Plaintiffs and the Class, including that NAF is conflicted by its ownership structure and unable to fairly and impartially decide arbitrations. This type of information is relied upon by consumers in making purchase decisions, and is fundamental to the decision to enter into, agree to be bound by, or attempt to appeal an arbitration. Had Defendants disclosed this material information regarding NAF arbitrations to Plaintiffs and the other class members, they would not have agreed to arbitration before NAF. These omissions of material fact violated California Civil Code Section 1770(a) sub sections (3), (5), (9), (14), and (19).

75.     As a result of Defendants' conduct, Plaintiffs and the Class are entitled to actual and statutory damages, costs of litigation, attorneys' fees and such other relief authorized under the CLRA.

- 22 -

DOCS\484105v3

## SECOND CAUSE OF ACTION
### (Breach of Contract Against NAF)

76.   Plaintiffs incorporate the above allegations as if set forth herein.

77.   Plaintiffs and the Class entered into contracts with NAF, the materials terms of which promise legitimate, bona fide arbitration services.

78.   Plaintiffs and the Class gave consideration that was fair and reasonable, and performed all conditions, covenants and promises required under their contracts.

79.   NAF breached its contractual obligation to provide arbitration services to consumers. Rather than engage in any legitimate decision making process, NAF used its status as an ostensible arbitrator to facilitate Mann Bracken's collection efforts by rubber-stamping improper awards against consumers.

80.   As a result, Plaintiffs and the Class were subjected to illegitimate arbitration awards, fees, and costs, in excess of the alleged debts owed and without due process, and suffered damages in an amount to be proven at trial.

81.   NAF directly benefited from, and was unjustly enriched by, these contractual breaches.

## THIRD CAUSE OF ACTION
### (Violation of the Fair Debt Collection Practices Act)

82.   Plaintiffs incorporate the above allegations as if set forth herein.

83.   Defendants are "debt collectors" as defined in 15 U.S.C. § 1692a(6), and in doing the acts alleged, were attempting to collect alleged consumer debts.

84.   Defendants violated, at minimum, 15 U.S.C. § 1692(e) and (f), by making false or misleading representations in their unfair attempts to collect debts from Plaintiffs and the Class, by among other things: representing that NAF was a independent forum when it was not; representing that the awards issued by NAF were not subject to or the result of any conflict of interest, when they were; and

CLASS ACTION COMPLAINT

DOCS\484105v3

representing that the additional fees and costs awarded against consumers were lawful when they were not.

85.    As a result of Defendants' violations of the FDCPA, Plaintiffs and the Class were harmed, and are entitled to injunctive relief, and to recover actual and statutory damages and attorneys' fees and costs pursuant to 15 U.S.C. § 1692k.

## FOURTH CAUSE OF ACTION
### (Violation of the Rosenthal Fair Debt Collection Practices Act)

86.    Plaintiffs incorporate the above allegations as if set forth herein.

87.    Defendants are "debt collectors" within the meaning of California Civil Code § 1788.2(c).

88.    Plaintiffs and the Class are "debtors" within the meaning of California Civil Code § 1788.2(h), and in doing the acts alleged, were attempting to collect alleged consumer debts.

89.    Defendants were engaged in the attempted collection of consumer debts, and are legally bound to follow the prescriptions of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788, *et seq.*

90.    Defendants violated the RFDCPA, California Civil Code § 1788.17, through their violations of 15 U.S.C. §§ 1692 (e) and (f) of the FDCPA, by making false or misleading representations in their unfair attempts to collect debts from Plaintiffs and the Class.

91.    Defendants' violations of the RFDCPA were intentional and/or malicious.

92.    As a result of Defendants' violations of the RFDCPA, Plaintiffs and the Class were harmed and are entitled to damages under California Civil Code § 1788.30.

## FIFTH CAUSE OF ACTION
### (Violation of Bus. & Prof. Code Section 17500 et seq.)

93.    Plaintiffs incorporate the above allegations as if set forth herein.

- 24 -
CLASS ACTION COMPLAINT

DOCS\484105v3

94.    During the Class Period, Defendants engaged in a deceptive, misleading advertising and marketing campaign to exalt NAF as a neutral arbitration forum governed by the highest legal and ethical standards, completely independent from its debt collection counterparts, like Mann Bracken and Axiant. In fact, Defendants actively concealed their financial ties to one another, and such conflict prevented NAF from providing legitimate arbitration services.

95.    Defendants violated Business and Professions Code Section 17500 by making or causing untrue or misleading statements with the intent to induce consumers to buy arbitration services from them. These untrue and misleading statements included, but are not limited to, those set forth above.

96.    Defendants knew or should have known that the statements were untrue or misleading at the time they were made.

97.    As a result of Defendants' untrue and misleading statements, Plaintiffs and the Class lost money and suffered injury in fact, and thus are entitled to restitution, injunctive relief and such other relief authorized under Section 17535.

## SIXTH CAUSE OF ACTION
### (Violation of Bus. & Prof. Code Section 17200 et seq.)

98.    Plaintiffs incorporate the above allegations as if set forth herein.

99.    Defendants' conduct constituted unlawful, unfair, and fraudulent business acts or practices under Business and Professions Code Section 17200 *et seq.*

100.    Defendants' practices were unlawful in that they violated:

(a)    California Civil Code Section 1770(a) (Consumer Legal Remedies Act);

(b)    15 U.S.C. Section 1692 *et seq.* (Fair Debt Collection Practices Act);

(c)    California Civil Code Section 1788 *et seq.* (Rosenthal Fair Debt Collection Practices Act);

(d)    California Business and Professions Code Section 17500 *et seq.* (False Advertising Law); and

(e)    California Code of Civil Procedure, Section 1280 *et seq.* (California Arbitration Act).

101.  Defendants' practices were unfair because any utility for Defendants' conduct is outweighed by the gravity of the consequences to Plaintiffs and the Class, and/or Defendants' conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiffs and the Class.

102.  Defendants' practices were fraudulent because they were likely to and did deceive Plaintiffs and the Class, and Defendants engaged in such practices knowingly.

103.  Defendants' unfair and fraudulent practices include, but are not limited to, the following:

(a)    promoting, marketing, and selling purportedly legitimate arbitration services, with no intent to provide them as advertised;

(b)    charging and collecting improper and illegitimate fees and costs for arbitration services that were not rendered; and

(c)    deceiving courts to confirm bogus arbitration awards as "judgments" falsely claiming they were issued by independent arbitrators.

104.  As a result of Defendants' acts of unfair competition, Plaintiffs and the Class lost money and suffered injury in fact, and thus are entitled to restitution, injunctive relief and such other relief authorized under Section 17203.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment, as follows:

A.    An order certifying this case as a class action and appointing Plaintiffs and his counsel to represent the Class;

DOCS\484105v3

1      B.      An order awarding Plaintiffs and the Class actual, consequential, and

2  statutory damages to be determined at trial;

3      C.      An order awarding exemplary damages in an amount to deter and

4  punish;

5      D.      An order awarding restitution and/or disgorgement and other equitable

6  relief as the Court deems proper;

7      E.      An injunction prohibiting Defendants from continuing to engage in

8  unfair and unlawful business practices and false advertising, including prohibiting

9  NAF from arbitrating disputes involving Mann Bracken or Axiant;

10     F.      Pre- and post-judgment interest;

11     G.      Attorneys' fees and costs of suit; and

12     H.      Such other relief as the Court may deem just and proper.

13                          **<u>DEMAND FOR JURY TRIAL</u>**

14         Plaintiffs demand a trial by jury on all matters for which a jury trial is

15  guaranteed.

16  DATED:  September 1, 2009            MILBERG LLP
                                        JEFF S. WESTERMAN
17                                      SABRINA S. KIM

18

19

20                                      SABRINA S. KIM

21                                      One California Plaza
                                        300 South Grand Ave., Suite 3900
22                                      Los Angeles, CA 90071
                                        Telephone: (213) 617-1200
23                                      Facsimile:  (213) 617-1975
                                        Email: jwesterman@milberg.com
24                                        skim@milberg.com

25

26

27

28

- 27 -

CLASS ACTION COMPLAINT

DOCS\484105v3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILBERG LLP
PETER G.A. SAFIRSTEIN
ANDREI RADO
ROLAND RIGGS
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229
Email: psafirstein@milberg.com
  arado@milberg.com
  rriggs@milberg.com

LAW OFFICE OF IAN CHOWDHURY
IAN D. CHOWDHURY
8853 Fullbright Avenue
Winnetka, CA 91306
Telephone: (818) 407-0510
Facsimile: (818) 337-2215
Email: ian@ianchowdhury.com

Attorneys for Plaintiffs and the Class

CLASS ACTION COMPLAINT

DOCS\484105v3